IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CHRISTOPHER EVERETT                                                                       PLAINTIFF
ADC #152664

v.                                      3:20-cv-00220-DPM-JJV

SHAWN RICHARD; *et al.*                                                                DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

  The following recommended disposition has been sent to Chief United States District Judge D.P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen days from the date of the findings and recommendations. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

**I. INTRODUCTION**

  Christopher Everett ("Plaintiff"), an inmate at the North Central Unit of the Arkansas Division of Correction ("ADC"), filed this action *pro se* pursuant to 42 U.S.C. § 1983 against multiple employees of the Arkansas Division of Correction, as well as individuals who provide

health care to ADC inmates. (Doc. Nos. 2, 4.) Plaintiff said he was being held in a one-man cell in punitive isolation. (Doc. No. 4.) He explained he has a history of serious mental illness that is ignored as far as his medical care, and his serious mental illness makes it inappropriate for him to be confined in the one-man cell. Plaintiff alleged all Defendants are deliberately indifferent to his serious medical needs by keeping him in punitive isolation and deliberately indifferent to the substantial risk of harm from the conditions of his confinement because he harmed himself and attempted suicide in the past. (*Id*. at 13-14.)

Plaintiff's claims against Defendants Shubert, Sights, Wilson, Griffin, Payne, Parker, Ricketts, and Jackson were dismissed without prejudice for failure to state a claim on which relief may be granted. (Doc. No. 10.) Plaintiff's retaliation claim and his official capacity claims were also dismissed. (*Id*.) Only Plaintiff's individual capacity deliberate indifference to serious medical needs and conditions of confinement claims remain pending. Plaintiff explained that his claims relate to the period of March 2020 to September 2020. (Doc. No. 55-1 at 23:9-23:15.)

Defendant Richard has filed a Motion for Summary Judgment. (Doc. Nos. 58-60.) Defendants Faust and Pierce (collectively, the "ADC Defendants") have also filed a Motion for Summary Judgment. (Doc. Nos. 55-57.) Plaintiff has responded (Doc. Nos. 61, 62) and this matter is now ripe for a decision. After careful review, and for the following reasons, I find both Motions for Summary Judgment should be granted.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the

record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  ANALYSIS

Plaintiff claims all Defendants violated his rights under the Eighth Amendment. Defendant Richard provided mental health care to Plaintiff; Defendants Faust and Pierce were Warden and Assistant Warden, respectively, at the North Central Unit for a period of time while Plaintiff was incarcerated there.

#### A.  Defendant Richard

Plaintiff claimed Defendant Richard was deliberately indifferent to Plaintiff's serious medical needs in connection with both his diagnosis and his course of treatment. The first medical record reflecting Defendant Richard's care of Plaintiff are notes from a telemedicine appointment

Defendant Richard had with Plaintiff on March 13, 2020. (Doc. No. 59-1 at 57-58.) As reflected in the notes, Plaintiff had told staff he was thinking about hanging himself, but felt better. (*Id.* at 57.) Plaintiff looked upbeat, and was cooperative and polite. (*Id.*) According to the notes, Plaintiff explained that March was a difficult month for him because he lost his son in March. (*Id.*) Plaintiff's weight was normal and he appeared to be taking good care of himself. (*Id.*) The March 13, 2020 notes reflect a diagnosis of borderline personality disorder. (*Id.*) Defendant Richard observed: "No indication to start this pt on any psychotropic meds at this time. Due to personality disorder he will remain high risk for self harm especially in times of adversity. Pt verbalized an understanding of how to contact MH in the future in he requires our services." (Doc. No. 59-1 at 58.)

Between March 13, 2020 and May 8, 2020, when Plaintiff next saw Defendant Richard, Plaintiff had numerous visits by mental health staff to his cell. On the following dates, Plaintiff expressed no mental health concerns: March 16, 19, 20, 25, 27, 30; April 1, 3, and 7. (*Id.* at 54-57.) On April 8, 2020, Plaintiff was seen in the health services office by Jeremy Wilson and reported being "angry with the psychologist for not ordering him SSRI[1] medication." (*Id.* at 53.) Plaintiff claimed that he needed his mental health medication to treat his schizophrenia. (*Id.*) The encounter notes from that day point out that Plaintiff had been seen by a psychologist (presumably Defendant Richard) on March 13, 2020, but Plaintiff was not diagnosed as schizophrenic. (*Id.*) During Plaintiff's visit with Jeremy Wilson, Plaintiff otherwise reported that he was "good." (*Id.*)

Plaintiff was visited in his cell by other mental health staff on April 9, 13, 16, 17, and 20. On those dates, Plaintiff did not have mental health issues that he wished to discuss. (Doc. No.

---

[1] Selective Serotonin Reuptake Inhibitor ("SSRI") medications are used to treat depression, along with other disorders.

59-1 at 52-53.) But also on April 20, 2020, an Andrew C. Schubert saw Plaintiff in the health services office. (*Id*. at 50-52.) Plaintiff was seen "secondary to grievance" and was unhappy with his past mental health evaluations. (*Id*. at 51.) At that visit Plaintiff displayed behavior that was "combative towards mental health services and the prison staff, and feels he has been treated unfairly and poorly as a rule. [Plaintiff] does not present with any active symptoms of an SMI." (*Id*.) It was also noted that "[t]he Borderline diagnosis seemed apparent as well." (*Id*.)

Plaintiff again was visited in his cell by mental health staff on April 22, 23, and 27. (*Id*. at 50-51.) He had no mental health concerns to discuss during those visits. (Doc. No. 59-1 at 50-51.) On April 29, 2020, Plaintiff was seen again by Andrew C. Schubert, who noted that Plaintiff "indicated he was doing well, but continues to demand that he see the psychiatrist and be 'put on [his] damn meds.'" (*Id*. at 50.) Nothing in the record indicates Defendant Richard was aware of Plaintiff's request to be put on medication on April 29. During the April 29 visit with Mr. Schubert, Plaintiff "displayed no observable symptoms and appear[ed] very relaxed throughout the visit." (*Id*.)

Mental health staff visited Plaintiff in his cell again on May 4 and 6, but he had no mental health concerns to discuss. (*Id*. at 48.) Then, later in the day on May 6, Plaintiff tried to hang himself with a sheet. (*Id*. at 47.) Plaintiff was seen at the health services office on May 6 and 7 by a couple of different providers.

Defendant Richard had another telemedicine visit with Plaintiff on May 8, 2020. (*Id*. at 43-44.) Plaintiff had been referred to the clinic "after recent suicidal gesture and acting out prompting him to be placed on both precautions and behavioral control." (Doc. No. 59-1 at 43.) Defendant Richard discussed possible medications, but Plaintiff reported "either having an adverse reaction or getting no benefit from every antidepressant and mood stabilizer [Defendant Richard]

5

listed." (*Id*.)  Defendant Richard ultimately prescribed Loxapine at that visit, noting that "based on [Plaintiff's] behavior, including repeated suicidal gestures, I feel it is more than justified to try him on an antipsychotic." (*Id*. at 44.)

Plaintiff was seen by other mental health staff after May 8, and Defendant Richard provided care for Plaintiff again on May 15, 2020. (*Id*. at 39.)  Defendant Richard discontinued Plaintiff's prescription for Loxapine on that day because Plaintiff had been taken to the infirmary for side effects of Loxapine and chest pains, and Plaintiff's EKG results were abnormal. (*Id*.)  At the time Defendant Richard discontinued the Loxapine, he noted he would "reschedule pt to f/u next available clinic to discuss options." (*Id*.)  Plaintiff agreed at his deposition that Defendant Richard discontinued the medication because Defendant Richard was concerned with the results of an EKG Plaintiff had been given while on the medication. (Doc. No. 59-2 at 29:20-29:25.)

Mental health staff visited Plaintiff on May 18, May 20, May 21, May 26, May 27, May 29, June 2, June 3, and June 5. (Doc. No. 59-1 at 38-46.)  On May 20, 2020, Plaintiff asked the mental health staff "to tell the doctor to restart his medication . . . ." (*Id*. at 37.)  On May 29, 2020, he again said he wanted to see the doctor and re-start his medication. (*Id*. at 36.)  Plaintiff made that same request on June 3, 2020, and June 5, 2020. (*Id*. at 35.)  There is no evidence in the record that Defendant Richard was privy to these requests.

When Plaintiff next saw Defendant Richard on June 5, 2020, Plaintiff sought to be placed on Loxapine again because Plaintiff "really liked it." (*Id*. at 33.)  Defendant Richard, however, refused to risk putting Plaintiff back on that medication and instead prescribed Haldol. (*Id*. at 33, 35.)  Plaintiff testified at his deposition that he was satisfied with his prescription of Haldol. (Doc. No. 59-2 at 63:5-63:7.)  Plaintiff made no other claims regarding Defendant Richard's course of treatment after being placed on Haldon on June 5, 2020. (*Id*.)

The record does not support a finding that Defendant Richard's chosen course of treatment was deliberately indifferent to Plaintiff's medical needs. Plaintiff's medical file demonstrates that Defendant Richard considered Plaintiff's symptoms in deciding when to medicate and how to medicate. While Plaintiff may have preferred something different, he has no right to his preferred course of treatment. *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018).

Plaintiff takes issue that he was not diagnosed as having a serious mental illness. (Doc. No. 61 at 1-3; Doc. No. 55-1 at 63:17-63:21.) ADC policy considers an inmate with certain mental health diagnosis as being an inmate with a serious mental illness. (Doc. No. 55-2, at ¶ 13; Doc. No. 55-5 at 2). ADC policy defines serious mental illness as:

> Psychotic, Bipolar, and Major Depressive Disorders and any other diagnosed mental disorder (excluding substance use disorders) associated with serious behavioral impairment as evidenced by examples of acute decompensation, self-injurious behaviors, and mental health emergencies that require an individualized treatment plan by a qualified mental health professional.

(*Id.*)

The ADC's restrictive housing policy prohibits the confinement of SMI inmates in extended restrictive housing. (Doc. No. 57 at 6, § 37; Doc. No. 55-5 at 4.)

In Response to Defendant Richards' Motion, Plaintiff points out that he was diagnosed by an outside provider with additional disorders. (Doc. No. 61 at 1.) In support of his argument, Plaintiff submitted a discharge fact sheet dated April 4, 2019, indicating the following discharge diagnosis: major depressive disorder, recurrent; posttraumatic stress disorder; borderline personality disorder; and antisocial personality disorder. (*Id*. at 5.) The fact sheet also identified active problems as: antisocial personality disorder; attention deficit disorder; bipolar disorder; depression, H/O obsessive compulsive disorder; history of oppositional defiant disorder; and suicidal ideation, among other issues. (*Id*. at 6.) Plaintiff asserts that pursuant to these diagnoses,

7

he should be considered an inmate with a serious mental illness as defined by the ADC. (*Id*. at 1-3.) Prison doctors, however, may exercise their independent medical judgment, and are not mandated to accept the diagnoses of a previous outside provider. *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997). And Plaintiff has no constitutional right to be diagnosed with the disorders from which he believes he suffers. The Court of Appeals for the Eighth Circuit has held that an inmate cannot establish an Eighth Amendment violation based solely on a disagreement with diagnosis. *Reid v. Griffin,* 808 F.3d 1191, 1192 (8th Cir. 2015) (per curiam). It appears that such a disagreement is the crux of Plaintiff's case against Defendant Richard. (Doc. Nos. 2, 61.) I note that Albert Kittrell, M.D., who oversees the administration of psychiatric services at the units comprising the ADC, is of the opinion that the care and treatment provided to Plaintiff by Defendant Richard was appropriate and satisfactory in connection with Plaintiff's complaints (Doc. No. 59-3 at 2.)

As to Plaintiff's conditions of confinement claim, Defendant Richard did not make Plaintiff's housing assignment and was not involved in disciplinary decisions. (Doc. No. 59 at 3, ¶ 15.) Plaintiff has not contested this fact or presented evidence to the contrary.

Considering the record before me, the evidence does not establish that Defendant Richard violated Plaintiff's rights as claimed. Accordingly, I recommend summary judgment be entered in Defendant Richard's favor and Plaintiff's claims against him be dismissed with prejudice.

### B. Defendants Faust and Pierce

Plaintiff alleges Defendants Faust and Pierce (collectively the "ADC Defendants") were deliberately indifferent to his serious medical needs and placed him at risk of substantial harm by keeping him confined in punitive isolation/restrictive housing. Defendant Faust was North Central Unit Warden in March 2020 until July 1, 2020. (Doc. No. 55-2 at 1, ¶ 1.) Defendant Pierce was

Deputy Warden at the North Central Unit in March 2020 until May 2020. (Doc. No. 55-3 at 1, ¶ 1.)

### 1. Qualified Immunity

The ADC Defendants contend they are entitled to qualified immunity on Plaintiff's personal capacity claims against them. (Doc. No. 56 at 5.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236). Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Id.*

### 2. Plaintiff's Claims

Plaintiff claimed the ADC Defendants were deliberately indifferent to his serious medical needs and placed him at a substantial risk of harm by housing him in punitive isolation/restrictive housing. According to Plaintiff, it was a violation of his rights that he was not diagnosed in such a way that he was considered a seriously mentally ill inmate. (Doc. No. 55-1 at 63:5-63:19.) In his Objection to the ADC Defendants' Motion for Summary Judgment, Plaintiff says the ADC Defendants were aware of his earlier diagnoses, but "failed to acknowledge" those diagnoses. (Doc. No. 62) To the extent Plaintiff contends the ADC Defendants failed to accept his earlier diagnosis, neither ADC Defendant is medically trained. (Doc. No. 55-2 at 4, ¶ 24; Doc. No. 55-3 at 1, ¶ 3.) Plaintiff does not contest that the ADC Defendants are not medically trained. (Doc. No. 62.) Because neither ADC Defendant had medical expertise, they cannot be held liable in connection with Plaintiff's diagnosis or course of treatment, without more. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). Further, as prison officials who lack medical expertise, Defendants Faust and Pierce were entitled to rely on the opinions of medical staff. *Fourte v. Faulkner County., Ark.*, 746 F.3d 384, 390 (8th Cir. 2014) (citing *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011)). When Plaintiff brought his earlier diagnoses to the attention of Defendant Pierce, Defendant Pierce forwarded the document to mental health staff. (Doc. No. 55-3 at 4-5, ¶¶ 25-26.)

Plaintiff also claimed the ADC Defendants were deliberately indifferent to his medical needs by housing him in punitive isolation/restrictive housing when he was an inmate with a serious mental illness. But neither ADC Defendant was made aware that Plaintiff suffered from a serious mental illness, as defined by the ADC. (Doc. No. 55-2 at 4, ¶¶ 21-23; Doc. No. 55-3 at 4, ¶¶ 21-23.) As such, Plaintiff cannot establish deliberate indifference.

Plaintiff additionally maintains the ADC Defendants placed him at a substantial risk of harm by keeping him in punitive isolation/restrictive housing considering his history of suicide attempts. Plaintiff was housed in punitive isolation/restrictive housing from March 2020 through September 2020. (Doc. No. 57 at 2, ¶ 10; Doc. No. 55-6 at 1-5.) Plaintiff maintains he attempted suicide at least five times while there. (Doc. No. 55-1 at 42:5-42:6.) In his Objection to the ADC Defendants' Motion for Summary Judgment, Plaintiff does explain how being confined in punitive isolation/restrictive housing was a substantial risk or how the ADC Defendants were deliberately indifferent to that risk. (Doc. No. 62.)

Pursuant to ADC policy, a departmental mental health counselor must make rounds in the punitive housing area no less than three times per week. (Doc. No. 57 at 4, ¶ 30.) The record reflects Plaintiff received such visits. (Doc. No. 59-1.) Plaintiff does not dispute this. (Doc. Nos. 61, 62.) Further, inmates assigned to restrictive housing are personally observed by a correctional officer twice per hour, but not more than forty minutes apart, on an irregular schedule. (Doc. No. 57 at 6, ¶ 38.) Inmates who have mental disorders or who demonstrate unusual, bizarre, or self-injurious behavior receive more frequent observations as determined by a mental health professional; suicidal inmates are observed continuously, directly or monitored camera, while on treatment precautions. (Doc. No. 57 at 6, ¶ 39; Doc. No. 55-5 at 7, ¶ 20.) If an inmate is confined in punitive isolation/restrictive housing for more thirty days, a mental health provider performs a behavioral mental health assessment at least every thirty days for inmates with a diagnosed behavioral health disorder, and more frequently if clinically indicated. (Doc. No. 57 at 6, ¶ 41.) For inmates without a diagnosed behavioral health disorder, an assessment is completed every ninety days and more frequently if clinically indicated. (*Id.*)

Plaintiff was placed on treatment precautions three times between the period of March 4, 2020 and June 30, 2020. (Doc. No. 55-2 at 4, ¶ 26.) The record reflects Plaintiff was observed by camera on different occasions. (Doc. No. 59-1 at 18, 25, 31, 42, 53, among others.) When the security camera in Plaintiff's cell malfunctioned, he was moved to a different camera cell. (*Id*. at 26.) Camera footage was at times reviewed. (*Id*. at 31.) The record reflects Plaintiff had periodic reviews, pursuant to policy. (Doc. No. 55-6 at 1-5.) The record reflects that security staff successfully monitored Plaintiff, finding him "tying a [noose] rapidly [then] putting his head inside and lowering himself" and stabbing himself in the arm with a pen. (Doc. No. 59-1 at 21, 30). The record reflects Plaintiff was observed by mental health staff and security while in punitive isolation/restrictive housing. Plaintiff presented no evidence that Defendants were deliberately indifferent to any substantial risk of harm he faced based on his confinement in punitive isolation/restrictive housing. (Doc. Nos. 61, 62.) And Plaintiff also presented no evidence establishing that being confined in punitive isolation/restrictive housing was a substantial risk of harm. (Doc. No. 59-2 at 55:3-55:8.)

Where, as here, Defendants Faust, and Pierce have moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" *Fatemi v. White*, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). Yet Plaintiff has not come forward with evidence creating a genuine issue of material fact that would preclude the entry of summary judgment in each ADC Defendant's favor. I find Defendants Faust and Pierce did not violate Plaintiff's rights as alleged and are entitled to qualified immunity. Summary judgment should be entered in each ADC Defendant's favor.

Plaintiff sued all Defendants in their personal and official capacities. As mentioned above, Plaintiff's official capacity damages claims were dismissed previously. (Doc. No. 10.) Without a constitutional violation by the individual Defendants, Plaintiff's official capacity claims for injunctive relief also fail.

## IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendant Richard's Motion for Summary Judgment (Doc. No. 58) be GRANTED.

2. Defendants Faust and Pierce's Motion for Summary Judgment (Doc. No. 55) be GRANTED.

3. Plaintiff's claims against Defendants Richard, Faust, and Pierce be DISMISSED with prejudice.

4. This case be DISMISSED.

6. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 8th day of June 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRSTE JUDGE